IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

CLARENCE SHED                                                                            PLAINTIFF

V.                                                          CIVIL ACTION NO. 3:16CV171-NBB-RP

JOHNNY COLEMAN BUILDERS, INC.;
JOHNNY COLEMAN d/b/a
JOHNNY COLEMAN COMPANIES, LLC;
SHERRY MAGGIO FLYNN, and
JOHN DOES 1-10                                                                           DEFENDANTS

**MEMORANDUM OPINION**

This cause comes before the court upon the defendants' motion for summary judgment. Upon due consideration of the motion, response, exhibits, and applicable authority, the court is ready to rule.

Factual and Procedural Background

Plaintiff Clarence Shed filed this diversity jurisdiction action on July 29, 2016, asserting various negligence, fraud, and breach of contract claims against the defendants arising from an alleged toxic mold infiltration of the home he briefly rented from defendant Johnny Coleman Companies, LLC. Shed had entered into a Mississippi residential lease agreement with said defendant on December 4, 2013, for a property located in the Alex Cove subdivision of Southaven, Mississippi.

The plaintiff alleges that in January 2014 he discovered that his shoes were covered with a green substance, but he apparently did not report the issue to the defendants until March 25, 2014, when he contacted defendant Sherry Flynn, an agent of the Coleman defendants, to inform her that an alleged mold problem had manifested in his master closet and that he was being treated by a physician because he had allegedly developed symptoms that could be related to

mold exposure. Flynn inspected the residence on the following day. She pulled back the carpet in the closet and noticed "a little swirl of something green," a "circular area in the carpet," water stains and wet, dark nail tacks underneath the carpet, and a "musty smell" in the bedroom adjacent to the closet. Noticing wet areas on an exterior wall of the house, Flynn concluded that the house must have a roof leak caused by hard rain and rainwater coming into the attic. Flynn scheduled Albert Brooks, a roofer, to inspect the roof the following day. The roofer confirmed that a water leak was present at the water heater vent in the roof.

The plaintiff arranged for ACCU Check Home Inspection to evaluate the house for mold on March 28, 2014, and the inspection confirmed an elevated level of mold spores in the master closet. On April 2, 2014, the plaintiff informed Flynn that he had received the results of the mold inspection and delivered a copy of the report to her. He later informed Flynn that he could no longer stay in the house. The lease was terminated on April 6, 2014, and the plaintiff moved out of the residence.

On April 11, 2014, the plaintiff was treated for a skin rash by Dr. Cheryl D. Winfrey, who noted a "rash and nonspecific skin eruption" and "exposure to mold." On April 25, 2014, the plaintiff was treated by Dr. Joy Carol Burbeck, who diagnosed him with shortness of breath most likely caused by heavy black mold exposure. The plaintiff was also treated by Dr. Noorain Akhtar on April 27, 2015. His examination revealed that the plaintiff suffered from a rash on his lower legs and arms consistent with an allergic reaction to mold.

The plaintiff subsequently filed his complaint asserting claims for breach of contract, bad faith breach of contract, negligence and gross negligence, fraud and/or negligent

misrepresentation, tortious breach of implied warranty of habitability, and negligence per se. The defendants have moved for summary judgment on all claims.

## Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Summary judgment, although a useful device, must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989).

## Analysis

The defendants argue that the plaintiff has failed to meet his burden of directing the court to admissible evidence to support the elements of his claims. First, regarding the mold claims, the defendants note that the plaintiff has not offered any expert opinion attributing the mold spread to any negligence on the part of the defendants. The defendants contend that without expert testimony establishing causation, the plaintiff's claims cannot survive summary judgment. Second, assuming arguendo the plaintiff could establish causation, the defendants argue that the plaintiff's property damage claim is limited by the terms of the contractual agreement he entered

3

into with defendant Johnny Coleman Companies, LLC, which contains a liability provision excluding damages to personal property. The agreement further states that the plaintiff takes the premises in "as-is" condition.

It is axiomatic that a successful negligence claim requires proof of proximate causation. "Proximate cause of an injury is that cause which in natural and continuous sequence unbroken by any efficient intervening cause produces the injury and without which the result would not have occurred." *Delahoussaye v. Mary Mahoney's, Inc.*, 783 So. 2d 666, 671 (Miss. 2001). An essential element of causation is foreseeability. *Id.* For a defendant to be liable for an act which causes an injury, "the act must be of such character, and done in such a situation, that the person doing it should reasonably have anticipated that some injury to another will probably result therefrom." *Gulledge v. Shaw*, 880 So. 2d 288, 293 (Miss. 2004) (quoting *Mauney v. Gulf Refining Co.*, 9 So. 2d 780, 780-81 (Miss. 1942)). In the absence of an affirmative causal connection between an alleged act of negligence and an injury complained of, a negligence claim necessarily fails. *Myrick v. Holifield*, 126 So. 2d 508, 511 (Miss. 1961).

In the present case, the defendants are correct in noting that the plaintiff has offered no expert opinion linking any alleged negligent acts of the defendants to the spread of mold in his former rental home. The defendants insist that, in a toxic mold case, "the essential proof of causation *must* come from plaintiff's scientific and medical experts." Daniel J. Penofsky, *Litigating Toxic Mold Cases*, 92 Am. Jur. Trials 113 § 101 (2004) (emphasis in original). The plaintiff acknowledges that he did not identify any experts during discovery but asserts that his treating physicians can offer expert opinion on causation pursuant to Local Rule 26(a)(2)(D),

which permits physicians and other lay witnesses to do so if the subject matter on which the witness is expected to testify has been properly disclosed.

While the cited Local Rule does provide that a treating physician may be called to offer expert opinions at trial, the plaintiff here has shown only that his treating physicians found his symptoms consistent with mold exposure. The physicians offer no opinion that the plaintiff's alleged injuries were caused by the mold found in the rental home; nor do they offer an opinion linking a negligent act of the defendants with the presence of the mold or as to whether the levels of mold found in the home were sufficient to cause the plaintiff's injuries. Further, the reliability of a specific causation opinion requires the proffered expert to consider and rule out other likely causes of the plaintiff's alleged ailments – in other words, the expert must perform, and the plaintiff must present to the court, a proper differential diagnosis. *See Jenkins v. Slidella, LLC*, 2008 WL 2659510, at *4 (E.D. La. June 27, 2008), *aff'd*, 318 F. App'x 270 (5th Cir. 2009). A differential diagnosis is "a process of elimination by which medical practitioners determine the most likely cause of a set of signs or symptoms from a set of possible causes." *Id.* (quoting *Pick v. American Medical Systems, Inc.*, 198 F.3d 241 (5th Cir. 1999)).

The plaintiff's failure to provide expert testimony on the issue of causation is fatal to his negligence claims. The Fifth Circuit has held that expert testimony is required to prove that a toxic substance caused a specific physical injury. *See Washington v. Armstrong World Industries, Inc.*, 839 F.2d 1121, 1123-24 (5th Cir. 1988) (affirming district court's grant of summary judgment where admissible expert testimony was lacking to prove asbestos exposure caused plaintiff's injury). In a toxic mold case similar to the case at bar, *Smith v. ADT Security Services, Inc.*, 2006 U.S. Dist. LEXIS 70109, No. 3:04-cv-104-HTW-JCS (S.D. Miss. Sept. 26,

2006), the court held that "[i]n order to prevail on his claim for physical injury, plaintiff must demonstrate by a reasonable medical probability through expert testimony that his alleged injuries were caused by mold exposure." *Id.* (citing *Bryant v. Metric Prop. Mgmt.*, 2004 U.S. Dist. LEXIS 11214, No. 4:03cv212Y, 2004 WL 1359526, at *7 (N.D. Tex. June 17, 2004)). *See also Roche v. Lincoln Prop. Co.*, 278 F. Supp. 2d 744, 750 (E.D. Va. 2003) (stating that the lack of expert testimony is fatal to a plaintiff's claim for specific physical injury resulting from mold exposure). As is the case here, the plaintiff in *Smith*, "[d]espite the inherently technical and scientific nature of these assertions [regarding mold exposure] . . . offered no expert testimony to support his claim." *Smith*, 2006 U.S. Dist. LEXIS 70109, at *11. Because the plaintiff offered no expert testimony to support his claim that mold exposure caused him to suffer a number of medical ailments and emotional distress, the *Smith* court concluded that he "failed to demonstrate an essential element of his claim, namely a causal connection between his alleged physical injuries and his alleged exposure to mold" and accordingly dismissed the plaintiff's personal injury and emotional distress claims. *Id.* at *12.

The *Smith* court likewise dismissed the plaintiff's personal property damage claim for the same reason. The court stated, "In order to prevail on his claim for mold-caused property damages, plaintiff must offer expert testimony demonstrating that the mold infestation in his home was caused by the leak in plaintiff's roof." *Id.* at *9-*10. The court again found the plaintiff's proof lacking, as the plaintiff offered no expert testimony to support his assertion, and the court dismissed the claim. *Id.* at *10.

Like the plaintiff in *Smith*, the plaintiff in the present case has failed to provide expert opinion as to the presence of mold in his home, the specific cause of the mold growth, or

6

whether the mold in the rental home caused the plaintiff's alleged injuries – much less expert opinion attributing the mold growth to any of the defendants' negligence. As the requisite causation elements of his physical injury and property damage claims are completely lacking, these claims must be dismissed. "A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Washington*, 839 F.2d at 1122.

The plaintiff's response to the defendants' motion for summary judgment did not address why the defendants are not entitled to summary judgment with respect to the plaintiff's fraud and negligent misrepresentation claims or to the claims for individual liability. A plaintiff's failure to pursue claims beyond the complaint suggests that he has abandoned them. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588, n.1 (5th Cir. 2006) (finding that a plaintiff's failure to defend a claim in her response to the defendant's dispositive motion constituted abandonment of the claim).

Even if the claims have not been abandoned, however, they must nevertheless be dismissed. To establish a fraud claim, the plaintiff must prove by clear and convincing evidence:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.

The plaintiff here cannot show that the defendants made a false representation to him, as the lease agreement at issue contains the following provision negating any such assertion:

> **14. CONDITION OF LEASED PREMISES: Tenant hereby acknowledges that Tenant has examined the leased premises prior to signing this Lease or knowingly waived said examination. Tenant acknowledges that Tenant has not relied on any representations made by Landlord or Landlord's agents**

> **regarding the conditions of the leased premises and that Tenant takes premises in its AS-IS condition with no express or implied warranties or representations beyond those contained herein or required by Mississippi law.**

In Mississippi, "where parties to a transaction finally reduce its terms to an executed writing, all negotiations and previous understandings are merged into the writings and the terms of the writing will control." *Rosson v. McFarland*, 962 So. 2d 1279, 1286 (Miss. 2007). Further, the plaintiff has shown no evidence that the defendants had knowledge of the roof leak or the presence of mold prior to the plaintiff's reporting the matter to the defendants. It is clear the plaintiff cannot establish a fraud claim against these defendants.

> To establish a claim for negligent misrepresentation, the plaintiff must show:
>
> (1) a misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that the defendant failed to exercise that degree of diligence and expertise the public is entitled to expect of it; (4) that the plaintiff reasonably relied on the defendant's representations; and (5) that the plaintiff suffered damages as a direct and proximate result of his reasonable reliance.

*Skrmetta v. Bayview Yacht Club, Inc.*, 806 So. 2d 1120, 1124 (Miss. 2002). Like the fraud claim, this claim fails because the lease agreement provides that no representations were made by the defendants or relied upon by the plaintiff. Further, the court has already determined that the plaintiff is unable to establish the fifth element of this claim – that the plaintiff suffered damages as a direct and proximate result of his reliance on the defendants' alleged misrepresentation, as the plaintiff has provided no expert testimony attributing his alleged ailments to mold exposure to the defendants.

As to the plaintiff's claims against the individual defendants, the plaintiff has failed to provide proof that Sherry Flynn or Johnny Coleman acted in any capacity other than as that of an agent, officer, or employee of the corporation. In Mississippi, "[i]ndividual liability of corporate

officers or directors may not be predicated merely on their connection to the corporation but must have as their foundation individual wrongdoing." *Turner v. Wilson*, 620 So. 2d 545, 548 (Miss. 1993). The plaintiff has shown no individual wrongdoing on the part of either defendant, and these claims will be dismissed.

The plaintiff has also failed to show genuine issues of material fact related to his contractual claims. In addition to the provision quoted above, other relevant provisions of the lease agreement state as follows:

> **13. TENANT INSURANCE: Landlord shall not be liable to Tenant, Tenant's family, or Tenant's invitees, licensees, and/or guests for damages not proximately caused by Landlord or Landlord's tenants. Landlord will not compensate Tenant or anyone else for damages proximately caused by any other source whatsoever, or by Acts of God, and Tenant is strongly encouraged to independently purchase insurance to protect Tenant, Tenant's family, Tenant's invitees, licensees, and/or guests and all personal property on the leased premises and/or in any common area from any and all damages.**

> \* \* \*

> **19. DELAY IN REPAIRS: Tenant agrees that if any repairs to be made by Landlord are delayed by reasons beyond Landlord's control, there shall be no effect on the obligations of the Tenant under this Lease.**

It is undisputed that the leak in the plaintiff's roof was caused by a hard rain. The lease agreement specifically excludes "Acts of God" and also provides that the tenant has made his own examination of the premises prior to entering the lease or has waived the same. The lease also provides that no delay in repairs shall affect the obligations of the tenant. The defendants have provided uncontradicted evidence that the property was repaired by March 31, 2014, after first reports of a problem on March 25, 2014. The plaintiff has shown no evidence of a breach of contract on the part of the defendants.

The plaintiff also brings a claim for breach of the implied warranty of habitability. Mississippi recognizes an implied warranty of habitability for residential leases. Under this implied warranty, a landlord owes a duty "to use reasonable care to provide safe premises at the inception of the lease." *O'Cain v. Harvey Freeman & Sons*, 603 So. 2d 824, 833 (Miss. 1991) (Sullivan, J., concurring). In *Sweatt v. Murphy*, 733 So. 2d 207, 210 (Miss. 1999), however, the court held that the warranty does not create negligence per se for housing code violations and that it can be expressly waived by the tenant. As noted above, the lease provided that no representations were made and that the plaintiff made his own inspection or waived the same. The court finds that the plaintiff's claim for breach of the implied warranty of habitability and negligence per se fail along with the rest of his claims.

## **Conclusion**

For the foregoing reasons, the court finds that the plaintiff has presented no genuine issues of material fact, and the defendants are entitled to judgment as a matter of law. A separate order in accord with this opinion shall issue this day.

This, the 22nd day of August, 2017.

/s/ Neal Biggers
**NEAL B. BIGGERS, JR.**
**UNITED STATES DISTRICT JUDGE**